**D. G. BLAND LUMBER CO. v. NATIONAL LABOR RELATIONS BOARD.**

No. 12703.

United States Court of Appeals
Fifth Circuit.

Nov. 8, 1949.

T. T. Molnar, Cuthbert, Ga., A. R. Lawton, Jr., Savannah, Ga., for appellant.

A. Norman Somers, Asst. Gen. Counsel, Natl. Labor Relations Bd., Washington, D. C., David P. Findling, Assoc. Gen. Counsel, Natl. Labor Relations Bd., Washington, D. C., Albert M. Dreyer, Atty., Natl. Labor Relations Bd., Washington, D. C., for appellee.

Before HUTCHESON, HOLMES, and SIBLEY, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from an order commanding the Central of Georgia Railway Company and its agent, F. P. Love, to comply with a subpoena issued by the National Labor Relations Board under Section 11(1) of the National Labor Relations Act, as amended,[1] and enjoining the appellant from taking any action intended to prevent said company and its agent from complying with the order. Neither the Railway Company nor its agent appealed from the order; only the Lumber Company appealed.

The material facts admitted by the pleadings may be summarized as follows: The International Woodworkers of America, an affiliate of the Congress of Industrial Organization, hereinafter referred to as the C. I. O., on January 21, 1948, filed with the National Labor Relations Board an amended petition for the determination and certification of a collective bargaining representative of the employees of the Bland Lumber Company. The Board investigated the petition, and found that there

was reasonable cause to believe that a question affecting commerce existed as to the representation of said employees for collective bargaining. On the basis of this finding, a hearing on the petition was ordered before an officer of the Board. A subpoena was served on F. P. Love, as freight agent of the Central of Georgia Railway Company, requiring him to appear and testify at the hearing and to produce all bills of lading, way bills, and other documents, showing all shipments to and from the Bland Lumber Company from December 1, 1947, through June 30, 1948. The evidence being sought by the Board was necessary in order for it to determine whether the question of representation of appellant's employees affected commerce as it is defined in Section 2(6) and (7) of the National Labor Relations Act. The attorneys for the Central of Georgia Railway Company appeared at the time and place designated in the subpoena, and told the hearing officer that the Railway Company had decided not to allow its agent to comply with the subpoena for the reason that, if it did so, it would subject itself to the risk of being held to have violated the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., prohibiting carriers from disclosing information respecting the business of shippers without their consent.

At a later date, the General Counsel of the Railway told the Lumber Company that he thought the subpoena should not be ignored, and that they were going to obey it. Bland Lumber Company thereupon brought an action in the Superior Court of Randolph County, Georgia, and obtained an injunction prohibiting F. P. Love, his superiors and subordinates, from furnishing the information sought by the subpoena. The Board was not made a party to the action in the state court, and the injunction was obtained without notice to it. The General Counsel of the Railway then told the Board that, because of the injunction in the state court, he could not furnish the information called for by the subpoena. Thereupon, the Board filed an application in the court below asking that it issue an injunction requiring Love and

1. 61 Stat. 136, 29 U.S.C.A. § 151 et seq.

the Railway Company to comply with the subpoena, and restraining the Lumber Company from taking any further action in the suit which it had brought in the state court, and from doing anything to prevent the Railway Company or its agent from so complying.

The appellant then filed its answer, setting up affirmative defenses as to the Board's jurisdiction to hold this investigation, in aid of which the subpoena was issued, which defenses were as follows: First, that neither the International Woodworkers of America, the C. I. O., nor the officers of either, had complied with Section 9(f), (g), and (h), of the Act, which provides that no investigation shall be made by the Board of any question affecting commerce, concerning the representation of employees, raised by a labor organization unless such labor organization, national or international, and any labor organization of which it is an affiliate or constituent unit, have filed statements showing their organization and financial condition with the Department of Labor, and unless the officers of such organizations have filed affidavits with the Board saying that they have no communistic beliefs or affiliations; second, that the Department of Labor and the Board refused to furnish counsel for the Lumber Company with information as to whether the International Woodworkers of America and the C. I. O. had complied with Section 9(f), (g), and (h), of the Act. The Board moved for judgment on the pleadings, and the District Court granted the motion on the ground that the issues raised by appellant's answer could not be litigated in a proceeding to enforce a subpoena issued under Section 11(1) of the Act. The court entered judgment on the pleadings, which directed the Railway Company and its agent to comply with the subpoena, and enjoined the Bland Lumber Company from taking any action to prevent them from so doing. Thus the questions presented are, first, whether the subpoena was issued in accordance with the statute; second, whether the evidence is competent, relevant, and material to an inquiry of the type or class that the Board has authority to conduct and is conducting.

Section 9(c) of the National Labor Relations Act, as amended by the Labor-Management Relations Act, authorizes the Board to conduct investigations to determine and certify collective bargaining representatives. It is admitted that the proceeding in which this subpoena was issued was such an investigation. Section 11(1) of the Act authorizes the Board to issue subpoenas to get evidence to aid it in its investigations. There is no allegation that the officer charged with issuing the subpoena acted otherwise than within the scope of his authority. The evidence sought by the Board is relevant and material. The issues sought to be raised by appellant as affirmative defenses in its answer are not relevant to this proceeding to enforce the subpoena.

The principal ground which appellant relies on for denying enforcement of the subpoena is that the Board was without jurisdiction to conduct the proceeding in which the subpoena was issued, because of the alleged noncompliance by the International Woodworkers of America, C. I. O., and their officers, with Section 9(f), (g), and (h), of the Act. This contention does not go to the jurisdiction of the Board, and it cannot be asserted as a defense in a proceeding to enforce a subpoena. The Board was authorized to act in cases of this character, and the subpoena was issued in furtherance of its acts. The Board is empowered to conduct this general class of proceedings; and its error, if any, in conducting a particular case within a general class cannot be asserted as a defense to an action to enforce a subpoena. Whether or not there is a legal impediment here of an administrative nature is an issue primarily for the Board's determination, which is not subject to review until final action has been taken by it. This principle was settled in Endicott Johnson Corporation v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424. In that case the Secretary of Labor issued a subpoena in aid of an administrative proceeding instituted under the Walsh-Healy

Act, 41 U.S.C.A. § 35 et seq. Compliance with the subpoena was refused. The court, in upholding compliance, held that the question as to whether the Secretary had jurisdiction to conduct the particular hearing was not an issue that could be raised in subpoena enforcement proceedings, and that the evidence sought by the subpoena was not incompetent or irrelevant. It was also pointed out in the case of Oklahoma Press Publishing Company v. Walling, 327 U.S. 186, at page 212, 66 S.Ct. 494, 90 L.Ed. 614, 166 A.L.R. 531, that a challenge to the agency's jurisdiction prior to the Board's preliminary investigation of violation is not an appropriate defense.

The Administrative Procedure Act, 5 U. S.C.A. § 1001 et seq., when it was originally introduced, had a provision that would have made the jurisdiction of the agency a litigable issue in subpoena enforcement proceedings; but the Attorney General and the National Labor Relations Board protested to the appropriate congressional committees that it was necessary in practice for the subpoenas to be enforced before the Board's jurisdiction could be established. Thereupon, Section 6(c), 5 U.S.C. A. § 1005(c), was changed to read as follows:

"Subpoenas and production of evidence. Agency subpoenas authorized by law shall be issued to any party upon request and, as may be required by rules of procedure, upon a statement or showing of general relevance and reasonable scope of the evidence sought. Upon contest the court shall sustain any such subpoena or similar process or demand to the extent that it is found to be in accordance with law and, in any proceeding for enforcement, shall issue an order requiring the appearance of the witness or the production of the evidence or data within a reasonable time under penalty of punishment for contempt in case of contumacious failure to comply."

This significant amendment is persuasive that the Congress intended to leave the scope of judicial inquiry unchanged upon an application for the enforcement of a subpoena. In adopting the Administrative Procedure Act as it now reads, or that portion of the same above quoted, the rule laid down by the Supreme Court in the case of Endicott Johnson Corporation v. Perkins, supra, was enacted into statutory law.

■ Appellant's contention that the Interstate Commerce Act, 49 U.S.C.A. § 15 (11), forbids disclosure of the evidence sought by the Board is deemed to be without merit. It is true that the section does forbid carriers from disclosing information concerning the nature, kind, quantity, destination, consignment, or routing, of property tendered or delivered to them for interstate transportation; but the section goes on expressly to provide that nothing in the chapter shall be construed to prevent the giving of such information in response to any legal process issued under authority of any state or federal court, or to any officer or agent of the Government of the United States or of any state or territory, in the exercise of its power. The Railway Company here is being required by legal process, under authority of the federal court, to furnish evidence to an agency of the United States. The documents demanded are not the property of the appellant, but belong to the Railway Company. There is not such a confidential relationship between appellant and the Railway Company as exists between priest and penitent, lawyer and client, or doctor and patient, so as to make the evidence privileged. The disclosure sought is a lawful one, and the Interstate Commerce Act does not forbid production of the evidence.

■ The appellant was properly enjoined from taking any action that would render the court's order ineffective or jeopardize the parties who were directed to comply with it. It was necessary to enjoin appellants from prosecuting the action in the state court in order to keep the Railway Company and F. P. Love from being subjected to punishment for contempt for obeying the order of the federal court. Section 2283 of Title 28 U.S.C.A., does not forbid a court of the United States to grant an injunction where necessary in aid of its jurisdiction or to protect or effectu-

ate its judgments. It is clear to us that in this case it was necessary to enjoin action in the state court in order for the federal court to effectuate its judgment.

Affirmed.